UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH EVERETT JOHNSON, JR., | No. C 05-2258 SI (pr) |
| Plaintiff, | **ORDER OF DISMISSAL** |
| v. | |
| Deputy HENSEL; et al., | |
| Defendants. | |

## INTRODUCTION

Joseph Everett Johnson, Jr., formerly an inmate at the San Mateo County Jail and now incarcerated at San Quentin State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983. Defendants have filed a motion to dismiss the action on the ground that plaintiff failed to exhaust administrative remedies. Plaintiff has opposed the motion to dismiss. Plaintiff also has filed a "motion of compliance with court order," a motion to amend, and a motion for sanctions. The action will be dismissed because administrative remedies were not exhausted before it was filed.

## BACKGROUND

The complaint in this action alleged that defendants had retaliated against Johnson on April 4, 21, and 28, 2005, while he was incarcerated at the San Mateo County Jail.

The inmate appeal process for the San Mateo County Jail's Maguire correctional facility is described in the San Mateo County Sheriff's Office policy and procedures manual. See Sanchez Decl., Exh. A. That manual states that an inmate may grieve any condition of

confinement over which the Sheriff's office has control, including classification actions, disciplinary actions and program participation. Sanchez Decl., Exh. A. The manual urges resolution of an inmate grievance at the lowest level possible level, and describes the steps to be taken to appeal an inmate grievance. The steps include informal resolution efforts followed by submission of written grievance if the inmate is dissatisfied with the response. The steps also include levels of review by the housing sergeant, the watch commander, and the detention division captain/facility commander.

There is no evidence that the policy and procedure manual that described the administrative appeal process was posted at the county jail. Instead, a section of Title 15 of the California Code of Regulations was posted at the county jail. That section provides that inmate grievance procedures are to be developed at various facilities, and that the policies and procedures shall include a grievance form or instructions for registering a grievance and various levels of appeal/review. See 15 Cal. Code Regs. § 1073.

The complaint alleges that Johnson was subjected to retaliation on April 5, 21, and 28, 2005 by jail staff while Johnson was incarcerated at the San Mateo County Jail's Maguire facility. Johnson did file inmate grievances regarding the April 5 and April 28 incidents, but concedes that he did not do so for the April 21 incident.[1]

After not receiving a response to the grievances regarding the April 5 and 28 incidents, Johnson sent Captain Sanchez a letter and filed another grievance. His May 16, 2005 letter to Captain Sanchez complained that his grievances dated April 5 and May 3 had "not been duly returned to me." Opposition, Exh. G. Captain Sanchez wrote in a May 20, 2005 response, "I will have my staff locate, review & return the grievances responses to you w/in (1) week." Opposition, Exh. H. Johnson's May 22, 2005 grievance, also directed to Captain Sanchez, stated that "this appeal contests the untimely process of appellants [sic] two (2) grievances which

---

[1] Johnson conceded that he did not exhaust administrative remedies for the April 21, 2005 incident and moved to amend his complaint to dismiss that claim. See Opposition, p. 1 (docket # 36); Motion To Amend, p. 2 (docket # 34). The claim regarding the April 21, 2005 incident will be dismissed.

2

concern constitutional deprivations by staff. These grievances were submitted on 4/5/2005 and 5/3/2005, and as of this writing, have not been responded to." Opposition, Exh. I. The supervisor's response dated May 22, 2005 stated that an inmate appeal had "been submitted to Lt. Randleman for review regarding the above stated grievance" and the part of the form for the facility commander's response stated that the two grievances "have been addressed by way of an inquiry and the results memorialized in the form of an administrative review." Id. On the other form, the August 4, 2005 response stated: "Mr Johnson, an administrative inquiry was done regarding your claim by Sgt. Southward. In that inquiry you were interviewed on 4/20/05 and refused to make a statement. The inquiry also located some evidence that disputed your claim. The findings of your claim regarding a racial slur are negative and no further action is taken on your grievance." Opposition, Exh. J. The parties agree that Johnson received that response on August 4, 2005. See Opposition, p. 3; Motion, p. 5.

This action is deemed to have been filed on May 27, 2005, the date Johnson stated in his proof of service that he mailed the complaint to the court. See Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003).

## DISCUSSION

A.  Defendants' Motion To Dismiss

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." See Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust the administrative remedies process in the San Mateo County Jail, the inmate had to appeal the lower level denials of his inmate appeal all the way to the Detention Division Captain (Facility Commander), as described in the policy and procedures manual quoted above.

Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534

U.S. 516, 524 (2002). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001).

An inmate's failure to exhaust administrative remedies is a matter in abatement. Defendants have the burden of raising and proving the absence of exhaustion, and may do so by way of an unenumerated Rule12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20, citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988). The court can decide factual issues in a jurisdictional or related type of motion because there is no right to a jury trial as to that portion of the case, unlike the merits of the case (where there is a right to a jury trial). See id. Wyatt and Ritza allow this court to resolve factual disputes, but only with regard to the exhaustion issue.

The San Mateo County Sheriff has an administrative appeal system for the Maguire correctional facility. See Sanchez Decl., Exh. A. The first step in that appeal process is for the inmate to make an effort at informal resolution with the staff member. If the problem cannot be resolved at that level, the inmate may submit a written grievance form and give it to a deputy or correctional officer. If the grievance is about a specific staff member, it goes to that staff member; if the grievance complains about inappropriate staff behavior, the grievance goes directly to the housing sergeant, who determines what course of action to take.

> D. The Housing Sergeant will review, reply, or forward the grievance to MCF Watch Commander (Lieutenant). . . .
>
> 1. The Housing Sergeant will be responsible for all grievances involving living conditions, discipline and privileges.
>
> 2. The Housing Sergeant will contact, if necessary, any staff member connected with the grievance and determine the appropriate course of action. This may include a written response by the staff member.
>
> 3. The Housing Sergeant will respond to the grievance, including any

4

            comments from staff members. If applicable, all grievances are given to the Watch Commander for review.

E.     The Watch Commander should determine if the grievance needs additional investigation[, and] will insure that the inmate receives a written response within ten days, including the reasons if the grievance is denied.

F.     If an inmate desires to appeal the Watch Commander's decision, he/she must be directed to write a letter to the Detention Division Captain (Facility Commander), who will review the grievance and the Watch Commander's response. The Captain will give a written response to the prisoner within two weeks of receipt, including the reasons if he/she denies the appeal.

Id. The policy manual also allows inmates to grieve or appeal directly to the Watch Commander or Detention Division Captain. Id.

     This action must be dismissed because Johnson did not exhaust his available administrative remedies before he filed suit. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). Johnson's complaint alleged that defendants retaliated against him on April 4, 21, and 28, 2005. He filed a written grievance on April 5, 2005 concerning the April 4 incident. Sanchez Decl., Exh. C. He filed a written grievance dated May 3, 2005 regarding the April 28, 2005 incident. Sanchez Decl., Exh. D. He did not receive the final response to his appeal until August 4, 2005, more than two months after he filed his complaint in this action. Completion of the administrative appeal process while this action was pending does not help Johnson because the statute requires exhaustion before the action is filed. See Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006). While there may be cases in which prison and jail authorities completely fail to respond to an inmate's grievance for such a long time that an inmate can assume that no response ever will be made, this is not such a case. Johnson filed his federal complaint less than two months after the incidents complained of occurred. In fact, he tried to obtain a response to his pending grievances just days before filing this action: on May 16 and May 20, he asked for jail staff to respond to his earlier filed inmate grievances, but didn't wait long for a response before filing his federal complaint on May 27, 2005. A response eventually was sent to Johnson on August 4, 2005, but that was after Johnson's complaint was filed. His complaint was premature.

The entire action must be dismissed without prejudice because administrative remedies were not exhausted as to any of the claims before this action was filed.

B.      Johnson's Motion For Sanctions

Johnson moved for sanctions on the ground that defendants did not serve on him a replacement copy of the motion to dismiss, as the court had ordered them to do. Although defendants did not comply with the court-ordered deadline,[2] that failure was of no real consequence to Johnson because he eventually did receive the replacement copy of the motion to dismiss in sufficient time to prepare his opposition to the motion. Moreover, the court is especially disinclined to grant a motion for sanctions that itself attempts to mislead the court, as Johnson's motion does. Johnson asserts that "as of this date, 12-29-06, respondent's [sic] are 33 days beyond the court mandated time period" to send him the replacement copy of the motion to dismiss. Motion For Sanctions, p. 2. That statement is not credible because Johnson's filings submitted the same day actually cite to specific pages in the motion to dismiss, showing that he had it in hand. See Motion To Amend (docket # 34), p. 2 (giving page and line cite to motion to dismiss); Plaintiff's Opposition To Defendant's Unenumerated 12(b) Motion To Dismiss (docket # 36), p. 2:20 (referring to and attaching part of Sanchez declaration that had been submitted in support of defendants' Rule 12(b) motion). Johnson also suggests in his motion for sanctions that the court ordered defendants to send him replacement copies of their motion as well as copies of two court orders. Motion For Sanctions, p. 2; see also Motion Of Defense Counsel's Non-Compliance of Court Order, p. 2:12-16. That is false, as the court had not ordered defendants to send replacement copies of orders but only to send a replacement copy of

---

[2]Johnson argues that defendants are responsible for the documents not reaching him. In light of a proof of service that documents were mailed, the court will not hold defendants responsible for the failure of those documents to arrive in Johnson's cell. Defendants' non-compliance with the court order was in failing to put the correct documents in the mail on November 16, 2006. The November 16, 2006 proof of service shows that the defendants sent a replacement copy of their first motion to dismiss rather than of the September 29, 2006 motion to dismiss, as the court had ordered.

6

the motion. Johnson's motion for sanctions is DENIED. (Docket # 35.)

## CONCLUSION

Defendants' motion to dismiss is GRANTED for plaintiff's failure to exhaust administrative remedies before filing this action. (Docket # 20.) Plaintiff's motion for sanctions is DENIED. (Docket # 35.) Plaintiff's motion to amend is GRANTED; the claim regarding the April 21, 2005 incident is dismissed from this action. (Docket # 34.) Plaintiff's "motion of compliance with court order," informing the court that plaintiff was not seeking another extension of time, is DISMISSED as unnecessary. (Docket # 32.)

This action is dismissed without prejudice to plaintiff filing a new action in which he asserts claims as to which administrative remedies have been exhausted. The clerk shall close the file.

IT IS SO ORDERED.

Dated: July 23, 2007

_____
SUSAN ILLSTON
United States District Judge